**U.S. Department of Labor**         Office of the Solicitor
                                     Washington, D.C. 20210



April 4, 2022

Honorable Joshua D. Wolson
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106

Re: *Alcantara et. al v. Duran Landscaping, Inc.*, Docket No. 2:21-cv-03947

Dear Judge Wolson:

This Court asked the Secretary of Labor ("the Secretary") for the U.S. Department of Labor's views on issues presented in above-referenced case, which is currently pending before this Court. In response, the Secretary files this letter brief addressing the question presented: whether in a non-collective lawsuit between private parties brought pursuant to the Fair Labor Standards Act ("FLSA" or "the Act"), the parties may stipulate to the dismissal of FLSA claims with prejudice, without court approval, pursuant to Federal Rule of Civil Procedure 41(a)(1) ("Rule 41(a)(1)"), or whether the FLSA falls within the "applicable federal statute" exception to Rule 41(a)(1).[1] As

---

[1] Rule 41 states in relevant part:

Dismissal of Actions
    (a) Voluntary Dismissal.
    (1) By the Plaintiff.
        (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and <u>any applicable federal statute</u>, the plaintiff may dismiss an action without a court order by filing:
            (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
            (ii) a stipulation of dismissal signed by all parties who have appeared.
        (B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

discussed below, it is the Secretary's position that the FLSA falls within the "applicable federal statute" exception based on Supreme Court precedent, Congress's legislative acceptance of that precedent, and the longstanding view of the Secretary, endorsed by the majority of the circuit courts to have considered the issue, that FLSA rights cannot be waived or compromised without supervision by the Department of Labor ("Department") or approval by a court. Accordingly, for an employee and a private employer to stipulate to the dismissal of FLSA claims with prejudice under Rule 41(a)(1), a district court must first determine that the parties' proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

**Background**

1. In September 2021, Byron Alcantara, Luis Roberto Ruiz Velasquez, and Raymundo Hernandez ("Plaintiffs") filed a complaint in this Court against Duran Landscaping, Inc. (d/b/a "Duran Landscaping & Hardscaping, LLC" and "Duran's Landscaping, LLC") ("Defendant") alleging that they are entitled to unpaid overtime, liquidated damages, and attorney's fees under the FLSA and the Pennsylvania Minimum Wage Act. See Compl. 1, 4, ECF No. 1. In December 2021, before Defendant filed an answer, Plaintiffs' counsel informed this Court that the parties had reached a settlement of all claims. See Pls. Notice, ECF No. 11. On January 5, 2022, following a status conference, this Court invited briefing by the parties addressing whether it "needs to review and approve" "a private FLSA settlement" and "its related attorney's fee agreement." Order, ECF No. 14.

2. Only Plaintiffs responded to the Court's invitation. On January 21, 2022, Plaintiffs argued that where parties settle non-collective FLSA claims filed in court, judicial review should be limited to determining whether the settled dispute is bona fide. See Pls. Br. 8, ECF No. 16. Plaintiffs also argued that judicial review of settlements of non-collective FLSA claims should not extend to the attorney's fee component of such settlements. See id.

**Discussion**

   A. *As a general matter, the Supreme Court has forbidden waiver of FLSA rights by private agreement.*

1. Congress enacted the FLSA with the express objective "to correct and as rapidly as practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. 202 (a), (b). The Act thus establishes a minimum wage, 29 U.S.C. 206(a), and requires the payment of overtime compensation, 29 U.S.C. 207, "to ensure that *each* employee covered by the Act … receive[s] 'a fair day's pay for a fair day's work' and is "protected from 'the evil of overwork.'" Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739

---

Fed. R. Civ. P. 41 (emphases added).

This brief does not address a Rule 41(a)(1) stipulation of dismissal *without prejudice*, an issue that is not present in this case and that would raise separate legal questions.

(1981) (quoting Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 578 (1942)) (emphasis in original).  Employers that fail to pay employees the minimum wage or overtime must provide "an additional equal amount as liquidated damages," 29 U.S.C. 216(b), in recognition of the fact "that failure to pay the statutory minimum on time may be so detrimental" to employees "that double payment must be made in the event of delay in order to insure restoration of the worker to [a] minimum standard of well-being." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945).  Section 16(b) of the FLSA provides a cause of action to employees for unpaid minimum wages or overtime compensation, liquidated damages, and "a reasonable attorney's fee." See 29 U.S.C. 216(b).[2]

The Supreme Court's "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right[s] …under the Act" and "have held that FLSA rights cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740 (listing cases).  The Supreme Court has identified at least three reasons for this nonwaiver rule.  First, the Court has determined, based on the legislative history of the FLSA, that the Act constituted "a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency." Brooklyn Sav., 324 U.S. at 706.  According to the Court, the protective purposes of the Act thus "require that it be applied even to those who would decline its protections"; otherwise, "employers might be able to use superior bargaining power to coerce employees to . . . waive their protections under the Act." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 302 (1985) (citing Barrentine, 450 U.S. 728 and Brooklyn Sav., 324 U.S. 697).  Second, in enacting the FLSA, Congress sought to establish a "uniform national policy of guaranteeing compensation for all work" performed by covered employees. Jewell Ridge Coal Corp. v. Local 6167, United Mine Workers of America, 325 U.S. 161, 167 (1945).  Consequently, "[a]ny custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage . . . cannot be utilized to deprive employees of their statutory rights." Id. (internal quotation marks omitted).  Third, the Court has held that permitting employees to waive their FLSA rights is inconsistent with the explicit purpose of the Act to

---

[2] Section 16(b) of the FLSA specifically provides, in relevant part:

> Any employer who violates the provisions of section 6 or section 7 of this [Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. 216(b).

protect employers against unfair methods of competition.  See 29 U.S.C. 202(a); Brooklyn Sav., 324 U.S. at 710.

That FLSA rights cannot be waived by private agreement remains a bedrock principle of FLSA jurisprudence.  In Verma v. 3001 Castor, Inc., the Third Circuit upheld the District Court for the Eastern District of Pennsylvania's conclusion that the plaintiff workers were employees entitled to minimum wage and overtime compensation under the FLSA, notwithstanding the fact that "each worker" was required to "sign[] an agreement stating that she is an independent contractor[.]"  937 F.3d 221, 229 (3d Cir. 2019) (internal quotations omitted).  In reaching this conclusion, the Third Circuit emphasized that "the whole point of the FLSA … is to protect workers by overriding contractual relations through statute."  Id. (citing Brooklyn Sav., 324 U.S. at 706).

2.  In accordance with the principle that FLSA rights are nonwaivable, the Supreme Court has long interpreted the Act to limit the ability of employees to privately settle or release their FLSA claims.  In two cases, Brooklyn Savings Bank v. O'Neil and D.A. Schulte, Inc. v. Gangi, the Supreme Court held that employees may not waive or otherwise compromise their right to recover unpaid wages or damages under the FLSA through private agreements with employers.

In Brooklyn Savings, the Supreme Court held that employees cannot waive their rights to liquidated damages in a private settlement with an employer where there is no bona fide dispute as to damages.  See 324 U.S. at 714.  In reaching its conclusion, the Supreme Court reasoned that the purpose of the FLSA precludes employees from privately waiving their rights under the statute.  According to the Court, "[n]o one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act"—principally, "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  324 U.S. at 707, 707 n.18 (citing, inter alia, 81 Cong. Rec. 7652, 7672, 7885).  The Court then held that "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages."  Id. at 707.  The Court further concluded that "[p]rohibition of waiver of claims for liquidated damages accords with the Congressional policy of uniformity in the application of the provisions of the Act to all employers subject thereto," adding that "[a]n employer is not to be allowed to gain a competitive advantage by reason of the fact that his employees are more willing to waive claims for liquidated damages than are those of his competitor."  Id. at 710.  The following year, in Gangi, the Court expanded upon Brooklyn Savings to hold that private settlements of FLSA claims are impermissible even where there is a bona fide dispute over coverage under the Act.  328 U.S. 108, 114-15 (1946).  Specifically, the Court held that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage."  Id. at 114.

3.  Congress's legislative acts in the years immediately following Brooklyn Savings and Gangi confirmed and built upon the limitations that those decisions place on an employee's ability to waive FLSA claims in a private settlement.  First, Congress amended the FLSA in the Portal-to-Portal Act of 1947 ("the Portal Act"), Pub. L. No. 80-49, 61 Stat. 84, which contained a section

4

on the waiver and settlement of FLSA claims, see id. at sec. 3 (codified at 29 U.S.C. 253). Motivated by concerns about the volume of litigation that had resulted from earlier Supreme Court decisions, which interpreted preliminary and postliminary activities as compensable under the FLSA, Congress authorized, in section 3 of the Portal Act, the compromise and waiver of claims that had accrued prior to the Act's enactment on May 14, 1947. See Integrity Staffing Sols., Inc. v. Busk, 135 S. Ct. 513, 516-17 (2014); see also 29 U.S.C. 251(a) ("Congress finds that the [FLSA] has been interpreted judicially . . . [to] creat[e] wholly unexpected liabilities[.]"). However, Congress explicitly limited the category of FLSA claims that could be compromised by employees to those that had accrued prior to May 14, 1947.³ In so doing, Congress left undisturbed the application of the Brooklyn Savings and Gangi nonwaiver rule to future FLSA claims.

Second, in 1949, Congress enacted section 16(c) of the FLSA, which vests the Secretary with authority to "supervise the payment of unpaid minimum wages or the unpaid overtime compensation" due under the Act. See Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 14, 63 Stat. 910, 919 (codified at 29 U.S.C. 216(c)). Section 16(c) specifies that "the agreement of any employee to accept such [a Department-supervised] payment" shall, upon payment in full, "constitute a waiver by such employee" of the employee's right under section 16(b) to bring suit for unpaid wages and liquidated damages. 29 U.S.C. 216(c). This legislative provision for the Department's supervision of FLSA settlements that will operate to waive the employee's FLSA claims supports the teachings of Brooklyn Savings and Gangi that employees cannot waive their FLSA rights on their own. If employees could do so, Congress's provision for the Department's supervision of settlements that validly waive FLSA claims when paid would have little, if any, practical import. See generally Gomez-Perez v. Potter, 553 U.S. 474, 485 (2008) (citing, inter alia, Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 176 (2005)) (it was "appropriate" to presume that when Congress enacted a prohibition against discrimination of

---

³ Specifically, section 3(a) of the Portal Act allows an employee to "compromise[] in whole or in part" "[a]ny cause of action under the [FLSA] . . . which accrued prior to *May 14, 1947*," and "any action (whether instituted prior to or on or after May 14, 1947) to enforce *such* a cause of action," so long as a "bona fide dispute [exists] as to the amount payable by the employer" and the compromise does not provide less than the minimum wage or overtime owed. 29 U.S.C. 253(a) (emphases added). Congress's use of the term "*such* a cause of action" in section 3(a) refers directly to the provision's earlier reference to causes of action under the FLSA that "accrued prior to May 14, 1947," thus making clear that section 3 only addressed FLSA liability arising before enactment of the Portal Act. Id. Additionally, sections 3(b) and (c) of the Portal Act provide that "[a]ny employee may hereafter waive his right under the [FLSA] to liquidated damages, in whole or in part, with respect to activities engaged in prior to *May 14, 1947*," id. at (b) (emphasis added), and that "[a]ny such compromise or waiver . . . shall . . . be a complete satisfaction of [the employee's] cause of action and a complete bar to any action based on such cause of action," id. at (c). As Senator Donnell explained, "we have recognized in our bill, by not making the provision for compromise and settlement applicable to the future, that there is a grave danger of placing a provision of that kind in the bill as to future activities, because such a provision might well result, as in the case of the Brooklyn National Savings Bank, in the utter demolition of the Fair Labor Practices Act." 93 Cong. Rec. 2121 (1947).

5

federal employees based on age in 1974, Congress expected it "to be interpreted in conformity with" precedent interpreting a "similarly worded prohibition of discrimination" enacted in 1972).

> B. *Consistent with the Supreme Court's longstanding position, most circuit courts to have considered the issue hold that employees may only settle their FLSA claims under Department supervision or through a court-approved stipulated judgment.*

Building on the foundation laid by Brooklyn Savings and Gangi, as well as Congress's subsequent revisions to the FLSA's legislative scheme, most circuit courts to have considered the issue have concluded that an employee may only waive or compromise their FLSA rights in one of two ways: with the supervision of the Department under section 16(c) or, where the employee files a 16(b) action, through a stipulated judgment that a court scrutinizes for fairness. This is also the longstanding position of the Department.

1. The leading circuit court case to articulate the view that an employee may only settle their FLSA claims with the supervision of the Department or the approval of a court is Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982). In Lynn's Food, an employer sought a declaratory judgment in district court that settlements it had reached with its employees in exchange for releasing all of their FLSA claims absolved it of any liability under the Act. Id. at 1351-52. The settlements followed an investigation by the Department, in which it found that the employer was liable for significantly more in back wages and liquidated damages than it had agreed to provide the employees. See id. at 1352. The Eleventh Circuit affirmed the district court's dismissal of the employer's action on the ground that the settlements violated the FLSA. See id.

Agreeing with the position taken by the Secretary,[4] the Eleventh Circuit held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." Id. at 1352-53. First, under section 16(c) of the statute, employees may waive their right to FLSA compensation if they accept payment of unpaid wages and that payment is made under the supervision of the Secretary. See id. at 1353. Second, when employees bring a private action against their employer under section 16(b), the district court "may enter a stipulated judgment" upon determining that the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Id. at 1353, 1355. Because the defendant-employer's settlement agreements with its employees did not fall within either category, the Eleventh Circuit concluded that the agreements could not be approved. See id. at 1353.

In reaching its conclusion, the Eleventh Circuit relied on the policy considerations underlying the Supreme Court's decisions in Brooklyn Savings and Gangi. "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." Lynn's Food, 679 F.2d at 1352. The facts in Lynn's Food

---

[4] See Sec'y of Labor Br. 13-14, Lynn's Food (No. 81-7747), 679 F.2d 1350 (11th Cir. 1982).

6

presented a stark example to the Eleventh Circuit of the result of such unequal bargaining power, yet the court recognized the importance of nonwaiver principles even for less exploitative scenarios.  See id. at 1354.  The Eleventh Circuit explained that courts must approve settlements where the employees themselves bring suit under the FLSA, a circumstance in which "[t]he employees are likely to be represented by an attorney[.]"  Id.

The Eleventh Circuit has subsequently reaffirmed its holding in Lynn's Food and reinforced that "[o]nly two ways exist for the settlement or compromise of an employee FLSA claim: one is where an employee accepts payment supervised by the Secretary of Labor, the other is pursuant to a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (citing 679 F.2d at 1352-53, 1354) (internal quotations and citations omitted).  In a 2009 decision, the Eleventh Circuit held that "the district court had a duty to review the compromise of [the plaintiff's] FLSA claim" (including the attorney's fee component of the compromise), notwithstanding the fact that the plaintiff was represented by counsel and was to receive "an amount stipulated to represent full compensation[.]"  Id. at 350, 352.[5]  And in 2013, the Court extended "the rule of Lynn's Food" to "settlements between former employees and employers."  Nall v. Mal-Motels, Inc., 723 F.3d 1304, 1307 (11th Cir. 2013).  See also, e.g., McBride v. Legacy Components, LLC, 778 F. App'x 708, 709 n.1 (11th Cir. 2019) (citing Lynn's Food, 679 F.2d at 1353) ("FLSA suits brought under 29 U.S.C. § 216(b) may be settled only if the district court scrutinizes the proposed settlement for fairness and then enters a stipulated judgment.").

The Fourth and Ninth Circuits have endorsed the Lynn's Food rule.  See Seminiano v. Xyris Enter., 602 F. App'x 682, 683 (9th Cir. 2015) (citing Nall, 723 F.3d at 1306) ("FLSA claims may not be settled without approval of either the Secretary . . . or a district court"); Taylor v. Progress Energy, Inc., 415 F.3d 364, 371 (4th Cir. 2005) ("The rights guaranteed by the FLSA cannot be waived or settled without prior DOL or court approval."), reh'g granted, judgment vacated (June 14, 2006), opinion reinstated on reh'g, 493 F.3d 454 (4th Cir. 2007), superseded by regulation on other grounds as stated in Whiting v. Johns Hopkins Hosp., 416 F. App'x 312 (4th Cir. 2011).  The Seventh Circuit has also favorably cited Lynn's Food and held that private settlement of FLSA claims is prohibited.  See Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) (citing Lynn's Food, 679 F.2d at 1352) (because "the [FLSA] is designed to prevent consenting adults from transacting about minimum wages and overtime pay . . . it is necessary to ban private settlements of disputes about pay").  Additionally, the Sixth Circuit has acknowledged that waiver of an FLSA claim in a private settlement is prohibited.  See McConnell v. Applied Performance Techs., Inc., 98 F. App'x 397, 398 (6th Cir. 2004).[6]

---

[5] In Silva, the Eleventh Circuit specifically noted that "Lynn's Food suggests no exception to judicial oversight of settlements when the employee receives all wages due" and "offers no support for the . . . exception proposed by" counsel for the plaintiff "that would include all counseled settlements."  307 F. App'x at 351.

[6] The Federal Circuit has also recognized that Lynn's Food applies to private-sector employees,

The Fifth Circuit has articulated a limited exception to the Lynn's Food rule, but its holding is in the minority. See Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 255 (5th Cir. 2012) (upholding a release of FLSA claims "predicated on a bona fide dispute about time worked" brought about by a private settlement between the employer and a union). It has, however, generally adhered to FLSA nonwaiver principles. See Bodle v. TXL Mortg. Corp., 788 F.3d 159, 164, 165 (5th Cir. 2015) (recognizing "the general rule . . . that FLSA claims . . . cannot be waived" and refusing to extend the Martin "exception" to a situation in which an employer obtained a waiver in an unrelated state court case where there was no evidence of a bona fide dispute). Additionally, the Eighth Circuit has held, in the context of a stipulated dismissal of an FLSA claim under Rule 41(a)(1), that where the parties negotiate an amount for attorney's fees "separately and without regard to the plaintiff's FLSA claim," the attorney's fee component of an FLSA settlement need not be approved by a court. See Barbee v. Big River Steel, LLC, 927 F.3d 1024, 1027 (8th Cir. 2019).[7] However, it has not taken a position on whether judicial approval is required "to settle bona fide disputes over hours worked or wages owed." Id. at 1026, 1027.

2. The Department has consistently and repeatedly expressed its view that FLSA settlements between private parties must be supervised by the Department or approved by a court. As noted above, in Lynn's Food, the Secretary argued—and the Eleventh Circuit agreed—that "the only . . . statutory means by which an employee can voluntarily waive [their] right to bring suit for unpaid wages and liquidated damages" is by a court-approved consent judgment under 16(b) or with supervision of the Department under section 16(c). Sec'y of Labor Br. 13-14, Lynn's Food (No. 81-7747), 679 F.2d 1350 (citing, inter alia, Gangi, 328 U.S. at 113 n.8). Additionally, in a 1988 Senate hearing on waivers under the Age Discrimination in Employment Act, the Solicitor of Labor "made clear that the Secretary . . . does not recognize as valid any waiver of FLSA rights that is not supervised either by the Secretary pursuant to section 16(c) (or, in the case of a private action filed under section 16(b)) by a federal court." H.R. Rep. No. 101-664, at 17-18 (1990) (citing Age Discrimination in Employment Act—Waiver of Rights, S. Hrg. No. 100-717, 110-15 (1988)). The Department reiterated its position regarding FLSA settlements as compared to settlements under other employment statutes in its 2008 rule amending its Family and Medical Leave Act ("FMLA") regulations. See 73 Fed. Reg. 67,934, 67,987 (Nov. 17, 2008).[8] Further,

---

but it has held that the same settlement-approval rules do not apply to settlements of federal employees' FLSA claims reached under collectively bargained grievance procedures. See O'Connor v. United States, 308 F.3d 1233, 1244 (Fed. Cir. 2002).

[7] The Eleventh Circuit went on to specify that "if FLSA settlements are subject to judicial review, the court would retain the authority to ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client." Barbee, 927 F.3d at 1027 n.1.

[8] In these regulations, the Department explained that "[t]he judicial prohibition against private settlements under the FLSA is based on policy considerations unique to the FLSA," which "was intended to protect the most vulnerable workers, who lacked the bargaining power to negotiate a fair wage or reasonable work hours with their employers." As such, "[t]he judicially-imposed

in Cheeks v. Freeport Pancake House, Inc., the Secretary took the position that the FLSA falls within the "applicable federal statute" exception to Rule 41(a)(1); accordingly, Rule 41(a)(1) stipulated dismissals terminating FLSA claims with prejudice must be approved by a court.  See Sec'y of Labor Letter Br., Cheeks (No. 14-299), 795 F.3d 199 (2d. Cir. 2015), 2015 WL 1814065, at *11-12.[9]

    C.  *The FLSA prohibits employees from compromising their rights under the Act without Department supervision or court approval and as such the FLSA must be an "applicable federal statute" under Rule 41(a)(1).*

The Second Circuit is the only circuit court to have specifically addressed whether private parties may stipulate to dismissal with prejudice of FLSA claims under Rule 41(a)(1).  In Cheeks, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41(a)(1) and, therefore, an employee who has filed a section 16(b) action against a private employer cannot stipulate to the dismissal with prejudice of their FLSA claim pursuant to Rule 41(a)(1) unless a court scrutinizes the parties' proposed settlement for fairness.  See 796 F.3d at 206.  The Second Circuit's holding is consistent with Supreme Court precedent holding that FLSA rights may not be waived by private agreement, as well as the longstanding view of the Department, the majority view of circuit courts to have considered the issue, and the majority view of district courts in this circuit that because FLSA rights may not be waived by private agreement, employees may only settle their FLSA claims with private employers in one of two ways: with the supervision of the Department under section 16(c) or, where the employee files a 16(b) action, through a stipulated judgment that a court scrutinizes for fairness.  This view also fully accords with what the Second Circuit has recognized as the "uniquely protective" purpose of the FLSA, upon which the FLSA nonwaiver rule is based.  See id. at 207.  A conclusion to the contrary, insofar as it would permit private parties to stipulate without any court approval to the dismissal *with prejudice* of their FLSA claims, would undermine the purpose of the FLSA, Congressional intent, and Supreme Court precedent.

1. In Cheeks, the Second Circuit agreed with the position taken by the Secretary as *amicus curiae* and endorsed the Lynn's Food rule in the context of stipulated dismissals of individual employee's FLSA claims entered into pursuant to Rule 41(a)(1), the same scenario at issue here.  See 796 F.3d at 206.  As in this case, the employee and employer in Cheeks reached a private settlement and filed a joint stipulation of dismissal with prejudice pursuant to Rule 41(a)(1), see id. at 200.which provides that a plaintiff may do so "[s]ubject to … any applicable federal

---

restrictions on private settlements under the FLSA have not been read into other employment statutes that reference the FLSA and should not be read into the FMLA."  73 Fed. Reg. at 67,987.

[9] Additionally, in Yu v. Hasaki Restaurant, Inc., the Secretary took the position as *amicus curiae* that the Lynn's Food rule extends to agreements between private parties terminating FLSA claims with prejudice under Rule 68(a) of the Federal Rules of Civil Procedure.  See Sec'y of Labor Br., Yu (No. 17-3388), 944 F.3d 395 (2d. Cir. 2019), 2018 WL 4443391 at *21-*24.

statute," Fed. R. Civ. P. 41(a)(1). The Court held that in light of "the unique policy considerations of the FLSA," the FLSA is an "applicable federal statute"; therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." 796 F.3d at 206, 207.

In reaching its conclusion, the Second Circuit noted that "[r]equiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" 796 F.3d at 206 (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)). The Court further reasoned that "the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary." Id. at 206. In one such case, for instance, the proposed settlement agreement contained "an overbroad release that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues,'" and provided for significant attorney's fees but did not include "adequate documentation to support such a fee award." Id. (quoting Lopez v. Nights of Cabiria, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015)). The Court acknowledged the potential impact of its holding on FLSA litigants, noting that "proceeding with litigation" may not make financial sense in many FLSA cases "if the district court rejects the proposed settlement." Id. However, it explicitly concluded that any burdens on litigants that might result from its holding were outweighed by the "primary remedial purpose" of the FLSA, a "uniquely protective statute," "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." Id. at 207 (citing Brooklyn Sav., 324 U.S. at 706-07).

2. As Cheeks demonstrates, the FLSA nonwaiver rule applies equally to stipulated dismissals with prejudice under Rule 41(a)(1) as to any other private settlement. A "[s]ettlement agreement[] entered into pursuant to a stipulated dismissal" under Rule 41(a)(1), even though it follows a lawsuit filed by one or more of the parties, is a private "contract." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020); see Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 79 (3d Cir. 1982) (a "settlement agreement is a contract and subject to the rules of contract interpretation"); see also Cheeks, 796 F.3d at 204 (referring to stipulated dismissals under Rule 41(a)(1) as "private stipulated dismissal[s]"). It is well established that "FLSA rights cannot be abridged by contract or otherwise waived[.]" Barrentine, 450 U.S. at 740 (citing, inter alia, Brooklyn Sav., 324 U.S. at 707). Rather, as the Third Circuit recently noted in Verma, "the whole point of the FLSA … is to protect workers by overriding contractual relations through statute." 937 F.3d at 229 (citing Brooklyn Sav., 324 U.S. at 706).

Employees risk waiving or compromising their FLSA rights if they stipulate to the dismissal of their FLSA claims with prejudice, as agreements terminating employees' claims with prejudice "foreclos[e] [their] ability to vindicate any FLSA claim[s] [they] may have by refiling at a later time." Perez-Nunez v. N. Broward Hosp. Dist., 609 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009). Indeed, in both Brooklyn Savings and Gangi, the Supreme Court held that the employees' purported releases of their FLSA claims in exchange for payment of back wages were "invalid,"

and permitted the employees to bring suit against their employers for liquidated damages despite the release. See Gangi, 328 U.S. at 112, 114-15; Brooklyn Sav., 324 U.S. at 713. Accordingly, as the Second Circuit held in Cheeks, and in accordance with the Secretary's longstanding position that an employee can only waive or compromise their FLSA rights with Department supervision under section 16(c) or through a court-approved stipulated judgment under 16(b), an employee who has filed a section 16(b) action may not enter into a settlement agreement terminating their FLSA claims with prejudice pursuant to a stipulated dismissal under Rule 41(a)(1) unless a court determines that the settlement is fair and reasonable resolution of a bona fide dispute over FLSA provisions.[10]

3. Requiring court approval of Rule 41(a)(1) stipulated dismissals that terminate FLSA claims with prejudice is consistent with purposes of the FLSA that the Supreme Court has cited in support of the nonwaiver rule: to assist "those employees who lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage," Brooklyn Sav., 324 U.S. at 707 n.18; to achieve a "uniform national policy of guaranteeing compensation for all work or employment by employees covered by the Act," Jewell Ridge Coal, 325 U.S. at 167; and to protect employers from unfair methods of competition, see Brooklyn Sav., 324 U.S. at 710.

Through stipulated dismissals under Rule 41(a)(1), employers with superior bargaining power may extract "'unreasonable, discounted settlement[s]'" from employees. Cheeks, 796 F.3d at 205 (quoting Socias v. Vornado Realty L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014)). As courts have recognized, low-wage workers "'often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly.'" Id. (quoting Socias, 297 F.R.D. at 40); see, e.g., Nall, 723 F.3d at 1306 (plaintiff agreed to accept the employer's out-of-court settlement offer because the employer was "pressuring her" and she "'was homeless at the time and needed money'"). This is the case "even where the employees are represented by counsel[.]" Cheeks, 796 F.3d at 207. Judicial scrutiny of FLSA settlements reached through Rule 41(a)(1) stipulated dismissals guards against unfair or unreasonable settlements of FLSA claims.

---

[10] In Yu v. Hasaki, a divided panel of the Second Circuit declined to extend Cheeks to FLSA settlements reached through Rule 68 offers of judgment, an issue which is not present here. 944 F.3d 395, 411 (2d Cir. 2019). Although the Secretary believes that Yu is contrary to the FLSA nonwaiver rule (as well as the reasoning of Cheeks), the Yu panel made clear that stipulated dismissals terminating FLSA claims with prejudice under Rule 41(a)(1) are distinguishable from agreements reached under Rule 68, in significant part because "Rule 41(a)(1)(A) contains an explicit command that judicial approval of a stipulated dismissal is necessary if a federal statute so requires," id. at 411, as well as due to the unique features of Rule 68 agreements, see id. at 411-12, 413. Accordingly, even if Yu were persuasive authority in a case involving an offer of judgment, stipulated dismissals terminating FLSA claims with prejudice under Rule 41(a)(1) must still be scrutinized for fairness in light of the "explicit command that judicial approval of a stipulated dismissal is necessary if a federal statute so requires" in Rule 41(a)(1), id. at 411, and the longstanding FLSA nonwaiver rule.

In this circuit, for instance, district courts regularly encounter broad releases of "any and all" employment claims, as well as restrictive confidentiality provisions that bar FLSA plaintiffs from speaking with other employees, in FLSA settlement agreements between employers and individual employees represented by counsel.  See, e.g., Solkoff v. Pennsylvania State Univ., 435 F. Supp. 3d 646, 659-60 (E.D. Pa. 2020) (declining to approve a "broad release of claims that include[d] unrelated claims and claims unknown to the plaintiff"); Howard v. Philadelphia Hous. Auth., 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016) (declining to approve a release provision that "would preclude Plaintiff from bringing 'any and all Claims' 'concerning the termination of Plaintiff's employment'"); Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 532-33 (E.D. Pa. 2016) (court could not approve an "extremely broad" release provision that "preclude[d] Plaintiff from raising 'any and all' claims she might have against Defendants arising from a laundry list of charges"); Mabry v. Hildebrandt, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (declining to approve confidentiality provision that "banned" the plaintiff "from speaking to any former coworkers or friends" or to any family members other than his spouse about the settlement); Brumley v. Camin Cargo Control, Inc., 2012 WL 1019337, at *6–7 (D.N.J. Mar. 26, 2012) (court could not approve confidentiality provision that barred plaintiff from discussing settlement with "any person," including "immediate family members").  These are exactly the types of settlement conditions which "underscore why judicial approval in the FLSA setting is necessary."  Cheeks, 796 F 3d. at 206 (citing Lopez, 96 F. Supp. 3d at 177-181) (discussing a case in which the district court rejected an FLSA settlement agreement with, among other problematic provisions, "'highly restrictive confidentiality provisions'" and an "overbroad release").[11]

Additionally, permitting employees to stipulate to the dismissal with prejudice of FLSA claims through Rule 41(a)(1) agreements without judicial scrutiny undermines "the Congressional policy of uniformity in the application of the provisions of the Act," and Congress' intent to protect employers from unfair methods of competition.  Brooklyn Sav., 324 U.S. at 710.  If employees are permitted to compromise their FLSA claims by stipulating to their dismissal with prejudice under Rule 41(a)(1), without any judicial oversight, it creates the risk that employers will use Rule 41(a)(1) stipulated dismissals to, for instance, establish wages below those required by the statute or, as noted above, prevent "current, former, or potential employees" from learning of FLSA violations the employer may have committed through restrictive confidentiality provisions, Mabry, 2015 WL 5025810, at *3.  In so doing, employers could "gain a competitive

---

[11] As the District Court for the Eastern District of Pennsylvania recently noted, broad release provisions risk "allow[ing] … employer[s] to extract from the plaintiff[s] a benefit beyond what" plaintiffs are "compensated for in exchange for payment of the fair wages" they are "owed," and thus "subvert the goal of remedying the consequences of unequal bargaining power."  Solkoff, 435 F. Supp. 3d at 660.  Additionally, District Courts for the District of New Jersey and the Eastern District of Pennsylvania have recognized that restrictive confidentiality provisions, "'if enforced,'" "'empower[] an employer to retaliate against an employee for exercising FLSA rights,'" notwithstanding the prohibition against such retaliation in section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(3), and risk "creat[ing] new imbalances of information between [employers] and their employee[s]." See Brumley, 2012 WL 1019337 at *7 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)); Mabry, 2015 WL 5025810, at *3.

advantage by reason of the fact that [their] employees are more willing to waive claims." Brooklyn Sav., 324 U.S. at 710; see Walton, 786 F.2d at 306 (citing Lynn's Food 679 F.2d at 1352). Requiring parties to submit their settlement agreements to a court ensures that such agreements do not become a means of undercutting Congress's intent in enacting the FLSA, to protect both employees from being compensated inappropriately and employers from operating on an unlevel playing field.

The Department is sensitive to the potential burdens placed on the judiciary and on litigants of judicial scrutiny of FLSA settlements, particularly where the back wages sought by employee may be "small" and the "employer's finances" may be limited. See Cheeks, 796 F.3d at 206. However, as the Supreme Court has recognized for nearly seven decades, FLSA rights are not waivable. The "uniquely protective" purposes of the FLSA upon which the FLSA nonwaiver rule is based, see id. at 207—to assist "those employees who lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage," to achieve a "uniform national policy of guaranteeing compensation for all work," and to prevent employers from "gain[ing] a competitive advantage" over their competitors by extracting waivers of statutory rights from their employees, see Brooklyn Sav., 324 U.S. at 707 n.18, 710, Jewell Ridge Coal, 325 U.S. at 167—warrant judicial scrutiny of a private settlement prior to a stipulation to dismiss FLSA claims with prejudice.

3. Particularly since being represented by counsel does not always, or necessarily, ensure fairness for low-wage workers, courts should review the attorney's fee portion of proposed FLSA settlements when scrutinizing settlements terminating FLSA claims with prejudice under Rule 41(a)(1). The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." Silva, 307 F. App'x at 351 (construing 29 U.S.C. 216(b)) (citing Lynn's Food, 679 F.2d at 1352). Accordingly, the Eleventh Circuit has held, citing Lynn's Food, that "[t]he FLSA requires judicial review of the reasonableness of counsel's legal fees[.]" Id. The Second Circuit has likewise made clear that the "obligation" to scrutinize "FLSA settlements entered into pursuant to a stipulated dismissal with prejudice," "as set forth in Cheeks," "extends to the reasonableness of attorneys' fees and costs." Fisher, 948 F.3d at 606 (citing 796 F.3d at 206).

As the Eleventh Circuit has recognized, judicial review of the attorney's fee portion of an FLSA settlement is necessary "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Silva, 307 F. App'x at 351. In Silva, the Eleventh Circuit upheld the district court's conclusion that the attorney's fee component of the FLSA settlement at issue (40 percent of the total recovery) was unreasonable, notwithstanding the fact that the attorney's fee was consistent with the contingency contract between the plaintiff and the attorney, since the fee exceeded the full lodestar amount. See id. aff'g 547 F. Supp. 2d 1299, 1306 (S.D. Fla. 2008). In addition to the possibility that plaintiffs' attorneys might "keep the lion's share of the proceeds," the Secretary and district courts have also identified attorney's fee awards that lack any supportive documentation and the risk that unscrupulous attorneys might collude with employers to achieve a resolution in the employer's interest as among the concerns posed by unsupervised FLSA settlements. See Sec'y of Labor Letter Br., Cheeks, 2015 WL 1814065, at *12 (quoting Socias,

297 F.R.D. at 41 and citing Zhou v. Wang's Rest., 2007 WL 134441, at *1-2, *8-9 (N.D. Cal. Jan. 16, 2007)); Kraus, 155 F. Supp. 3d at 534 (declining to approve attorney's fee portion of FLSA settlement, which would have awarded plaintiff's attorney 39 percent of total settlement, where attorney provided no basis for percentage nor any lodestar calculation). The Second Circuit has identified similar concerns. In concluding that judicial review of FLSA settlements is necessary, the Cheeks Court pointed to a case in which the attorney's fee portion of the FLSA settlement (approximately 40 percent of the total settlement amount) was entirely "unsubstantiated," as well as a case in which the plaintiff's attorney "pledge[d] … not to 'represent any person bringing similar claims against Defendants[.]'" Cheeks, 796 F.3d at 206 (citing Lopez, 96 F. Supp. 3d at 181 and quoting Guareno v. Vincent Perito, Inc., 2014 WL 4953746, at *2 (S.D.N.Y. Sept.26, 2014)). Judicial review of the attorney's fee component of FLSA settlements prevents such potential abuses.[12]

---

[12] As noted above, although the Eighth Circuit has not taken a position on whether all FLSA settlements need to be approved by a court or supervised by the Department, it has held, in the context of a stipulated dismissal of an FLSA claim under Rule 41(a)(1), that the attorney's fee component of the settlement need not be approved by a court where it is negotiated "separately and without regard to the plaintiff's FLSA claim." Barbee, 927 F.3d at 1027. And one district court in this circuit has favorably cited the Eighth Circuit's decision. Horton v. Right Turn Supply, LLC, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (citing Barbee, 927 F.3d. at 1026). To the extent Barbee stands for the proposition that courts need not scrutinize for fairness the attorney's fee component of an FLSA settlement that is separately negotiated from a plaintiff's FLSA claim for back wages and liquidated damages— including to confirm the attorney's fee is adequately documented—the Secretary disagrees with the Eighth Circuit's approach. See Fisher, 948 F.3d at 606 ("district courts are required to review" "stipulated dismissal with prejudice . . . for reasonableness as set forth in Cheeks," an "obligation" which "extends to the reasonableness of attorneys' fees and costs").

The Secretary notes, however, that the Barbee exception to judicial review of the attorney's fee portion of FLSA settlements is very limited. Truly separate negotiation of attorney's fees from a plaintiff's claim for back wages and liquidated damages may be rare; thus, agreements for attorney's fees are unlikely to be negotiated "separately and without regard to" such claims. Barbee, 927 F.3d at 1027. FLSA settlements encountered by district courts in the Third Circuit, for instance, appear to typically award a fixed portion of a common settlement fund to the attorney. See Kraus, 155 F. Supp. 3d at 533 ("percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases"); see, e.g., Hebert v. Chesapeake Operating, Inc., No. 2:17-CV-852, 2019 WL 4574509, at *3 (S.D. Ohio Sept. 20, 2019) (citing Barbee, 927 F.3d at 1027) (describing an agreement that awarded counsel a portion of an FLSA settlement as "a typical common fund settlement with fees part of the global resolution, not separately negotiated categories of recovery"). Additionally, the Barbee Court specified that "if FLSA settlements are subject to judicial review," the court would still review the attorney's fee component of the settlement to confirm "the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim" and that "there was no conflict of interest between the attorney and his or her client." 927 F.3d at 1027 n.1 (emphases added).

As the Secretary has consistently emphasized, the FLSA nonwaiver rule is based on policy considerations unique to the FLSA, which establishes a "uniform national" floor for minimum wage and overtime pay, Jewell Ridge Coal, 325 U.S. at 167, and was intended to protect "the lowest paid of the nation's working population," "who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage," Brooklyn Sav., 324 U.S. at 707 n.1. See, e.g., Sec'y of Labor Br. in Support of Pet. for Reh'g En Banc, Taylor v. Progress Energy, Inc., 493 F.3d 454 (4th Cir. 2007) (No. 04-1525), 2005 WL 6718391, at *13 (distinguishing FLSA settlements from settlements under other employment statutes that protect all segments of the workforce, from low-paid hourly workers to highly paid professionals). In light of the unique policy goals served by the FLSA, district courts must scrutinize FLSA settlement agreements as a whole, including any "side deals" such as expansive release and confidentiality provisions, see, e.g., Brumley, 2012 WL 1019337, at *2, to ensure that employers do not use their superior bargaining power to extract disproportionate benefits from plaintiffs in exchange for settling their FLSA claims or otherwise frustrate the purposes of the Act. See Cheeks, 796 F 3d. at 206. For the same reason, as the Eleventh Circuit has held, district courts must review the attorney's fee component of an FLSA settlement to ensure the fee is reasonable and "that no conflict of interest taints" the settlement agreement. Silva, 307 F. App'x at 351.

4. The Third Circuit has not yet specifically adopted the reasoning of Lynn's Food or Cheeks, though it has recently reaffirmed the FLSA nonwaiver rule. See Verma, 937 F.3d at 229. However, "[w]ithout guidance from the Third Circuit, district courts within this Circuit" already "look[] to the standards set forth by [the] Eleventh Circuit in" Lynn's Food. Howard, 197 F. Supp. 3d at 776 (citing 679 F.2d 1350). District courts in this circuit consistently reiterate that "there are only two ways that claims arising under the FLSA can be settled or compromised by employees: a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c) or a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." See Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (cleaned up); see also Solkoff, 435 F. Supp. 3d at 652; Howard, 197 F. Supp. 3d at 776; Adams v. Bayview Asset Mgmt., LLC, 11 F.Supp.3d 474, 476 (E.D. Pa. 2014) (same). District courts in this circuit regularly scrutinize the attorney's fee component of FLSA settlements when determining whether they are fair and reasonable. See, e.g., Solkoff, 435 F. Supp. 3d at 658; Kraus, 155 F. Supp. 3d at 533; Keller v. TD Bank, N.A., No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). They also regularly rely on Cheeks. See Ortiz v. Freight Rite, Inc., No. 1:21-CV-1060, 2021 WL 5988582, at *1 (M.D. Pa. Dec. 17, 2021); Kraus, 155 F. Supp. 3d at 529; Stickel v. SMP Servs., 2016 WL 827126, at *1 (M.D. Pa. Mar. 1, 2016).[13]

---

[13] Some district court decisions from within the Third Circuit have questioned whether judicial review of FLSA settlements is required, though they are in the minority. See Horton, 455 F.Supp.3d at 204-205; Fletcher v. Campbell Dev. LLC, No. CV 20-641, 2020 WL 7385285, at *1 (W.D. Pa. Dec. 16, 2020); Penska v. T.S. Dudley Land Co., Inc., No. 2:20-CV-435-NR, 2021 WL 719661, at *1 (W.D. Pa. Feb. 24, 2021). As alluded to above, one of these decisions concluded that courts need not review the attorney's fee component of an FLSA settlement. See Horton, 455 F.Supp.3d at 206, 208-209. Any suggestion that courts need not to scrutinize all aspects of an FLSA settlement before private parties may stipulate to the dismissal with

5. Moreover, construing Rule 41(a)(1) to permit an employee to accept an offer of judgment terminating her FLSA claim with prejudice without court approval or Department supervision may contravene the Rules Enabling Act ("REA"), 28 U.S.C. 2072(b). The REA provides that procedural rules "shall not abridge, enlarge or modify any substantive right." Id. A rule of civil procedure is valid under the REA if it "governs only the manner and the means by which the litigants' rights are enforced" but is invalid "if it alters the rules of decision by which [the] court will adjudicate [those] rights." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins., 559 U.S. 393, 407 (2010) (Scalia, J., writing for three concurring justices) (internal quotation marks omitted). When "adjudicat[ing] [FLSA] rights," the ordinary "rule[] of decision" is that private settlements are invalid. See, e.g., Brooklyn Sav., 324 U.S. at 713; Lynn's Food, 679 F.2d at 1352-53. A rule of civil procedure should not alter this longstanding rule of decision.

**Conclusion**

For the foregoing reasons, the Secretary submits that the FLSA falls within the "applicable federal statute" exception to Rule 41, such that parties in a private lawsuit brought pursuant to the FLSA may not stipulate to the dismissal of FLSA claims with prejudice without court approval.

---

prejudice of FLSA claims gives insufficient consideration to the protective purpose of the FLSA and the long line of cases prohibiting wholly private settlements of FLSA claims. However, even though these courts expressed some doubt as to whether judicial approval is required, all of these courts still considered the parties' motions to approve their proposed FLSA settlements and scrutinized the settlements for fairness. See Horton, 455 F.Supp.3d at 205; Fletcher, 2020 WL 7385285, at *1; Penska, 2021 WL 719661, at *1.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

MELISSA ANN MURPHY
Senior Attorney


s/James M. Morlath
JAMES M. MORLATH
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave., NW, Room N-2716
Washington, D.C. 20210
(202) 693-5555